**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

**MARIA D.,[1]**

**Plaintiff,**

**v.**

**FRANK BISIGNANO, COMMISSIONER OF SOCIAL SECURITY,**

**Defendant.**

**Case No. 3:25-cv-14083**
**Magistrate Judge Cheryl L. Pollak**

**OPINION AND ORDER**

This matter comes before the Court pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), regarding the application of Plaintiff Maria D. for Disability Insurance Benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq.*, and for Supplemental Security Income under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381 *et seq*. Plaintiff appeals from the final decision of the Commissioner of Social Security denying Plaintiff's application. After careful consideration of the entire record, including the entire administrative record, the Court decides this matter pursuant to Rule 78(b) of the Federal Rules of Civil Procedure. For the reasons that follow, the Court affirms the Commissioner's decision.

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to plaintiffs in such cases by only their first names and last initials. *See also* D.N.J. Standing Order 2021-10.

## I. PROCEDURAL HISTORY

On June 11, 2022, Plaintiff filed an application for a period of disability and disability insurance benefits, alleging that she had been disabled since an alleged onset date of September 8, 2021. R. 86, 120, 219–20. On September 28, 2022, Plaintiff protectively filed an application for supplemental security income also alleging an onset date of September 8, 2021. R. 87, 121, 221–27. Plaintiff's applications were denied initially on June 5, 2025, and upon reconsideration on June 2, 2023. R. 14, 122–26, 129–34. Plaintiff sought a *de novo* hearing before an administrative law judge ("ALJ"). R. 136–38. ALJ Kenneth Ayers held a telephonic hearing on March 5, 2024, at which Plaintiff, who was represented by counsel, Kimberly Gernatt, Esq., testified, as did an impartial vocational expert, Timothy Andenmatten. R. 34-71.

In a decision dated August 15, 2024, the ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act from September 8, 2021, the alleged onset date, through the date of the decision. R. 14–28. That decision became the final decision of the Commissioner of Social Security when the Appeals Council declined review on June 5, 2025. R. 1-6. Plaintiff timely filed this appeal pursuant to 42 U.S.C. § 405(g). ECF No. 1. On June 22, 2026, Plaintiff consented to disposition of the matter by a United States Magistrate Judge, pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. ECF No. 14.[2] On June 25, 2026, the case was reassigned to the undersigned. ECF No. 15. The matter is now ripe for disposition.

[2] The Commissioner has provided general consent to Magistrate Judge jurisdiction in cases seeking review of the Commissioner's decision. *See* Standing Order In re: Social Security Pilot Project (D.N.J. Apr. 2, 2018).

## II. LEGAL STANDARD

### A. Standard of Review

In reviewing applications for Social Security disability benefits, this Court has the authority to conduct a plenary review of legal issues decided by the ALJ. *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000). In contrast, the Court reviews the ALJ's factual findings to determine if they are supported by substantial evidence. *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000); *see also* 42 U.S.C. §§ 405(g) & 1383(c)(3). The United States Supreme Court has explained this standard as follows:

> Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains sufficien[t] evidence to support the agency's factual determinations. And whatever the meaning of substantial in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is more than a mere scintilla. It means – and means only – such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

*Biestek v. Berryhill*, 587 U.S. 97, 102–03 (2019) (internal citations and quotation marks omitted); *see also Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (citation and internal quotations omitted); *Bailey v. Comm'r of Soc. Sec.*, 354 F. App'x 613, 616 (3d Cir. 2009) (citations and quotations omitted); *K.K. ex rel. K.S. v. Comm'r of Soc. Sec.*, No. 17-2309, 2018 WL 1509091, at *4 (D.N.J. Mar. 27, 2018).

The substantial evidence standard is a deferential standard, and the ALJ's decision cannot be set aside merely because the Court "acting de novo might have reached a different conclusion." *Hunter Douglas, Inc. v. NLRB*, 804 F.2d 808, 812 (3d Cir. 1986); *see*, *e.g.*, *Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001) ("Where the ALJ's findings of fact are supported by substantial evidence, we are bound by those findings, even if we would have decided the factual inquiry differently.") (citing *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999)); *K.K.*,

2018 WL 1509091, at *4 ("'[T]he district court ... is [not] empowered to weigh the evidence or substitute its conclusions for those of the fact-finder.'") (quoting *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992)).

Nevertheless, the Third Circuit cautions that this standard of review is not "a talismanic or self-executing formula for adjudication." *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983) ("The search for substantial evidence is thus a qualitative exercise without which our review of social security disability cases ceases to be merely deferential and becomes instead a sham."); *see Coleman v. Comm'r of Soc. Sec.*, No. 15-6484, 2016 WL 4212102, at *3 (D.N.J. Aug. 9, 2016). The Court has a duty to "review the evidence in its totality" and "take into account whatever in the record fairly detracts from its weight." *K.K.*, 2018 WL 1509091, at *4 (quoting *Schonewolf v. Callahan*, 972 F. Supp. 277, 284 (D.N.J. 1997) (citations and quotations omitted)); *see Cotter v. Harris*, 642 F.2d 700, 706 (3d Cir. 1981) (stating that substantial evidence exists only "in relationship to all the other evidence in the record"). Evidence is not substantial if "it is overwhelmed by other evidence," "really constitutes not evidence but mere conclusion," or "ignores, or fails to resolve, a conflict created by countervailing evidence." *Wallace v. Sec'y of Health & Human Servs.*, 722 F.2d 1150, 1153 (3d Cir. 1983) (citing *Kent*, 710 F.2d at 114); *see K.K.*, 2018 WL 1509091, at *4. The ALJ's decision thus must be set aside if it "did not take into account the entire record or failed to resolve an evidentiary conflict." *Schonewolf*, 972 F. Supp. at 284-85 (citing *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978)).

Although the ALJ is not required "to use particular language or adhere to a particular format in conducting [the] analysis," the decision must contain "sufficient development of the record and explanation of findings to permit meaningful review." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004) (citing *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119 (3d Cir.

2000)); *see K.K.*, 2018 WL 1509091, at *4. The Court "need[s] from the ALJ not only an expression of the evidence s/he considered which supports the result, but also some indication of the evidence which was rejected." *Cotter*, 642 F.2d at 705-06; *see Burnett*, 220 F.3d at 121 ("Although the ALJ may weigh the credibility of the evidence, [s/]he must give some indication of the evidence which [s/]he rejects and [the] reason(s) for discounting such evidence.") (citing *Plummer v. Apfel*, 186 F.3d 422, 429 (3d. Cir. 1999)). "[T]he ALJ is not required to supply a comprehensive explanation for the rejection of evidence; in most cases, a sentence or short paragraph would probably suffice." *Cotter v. Harris*, 650 F.2d 481, 482 (3d Cir. 1981). Absent such articulation, the Court "cannot tell if significant probative evidence was not credited or simply ignored." *Id.* at 705. As the Third Circuit explains:

> Unless the [ALJ] has analyzed all evidence and has sufficiently explained the weight [s/]he has given to obviously probative exhibits, to say that [the] decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.

*Gober*, 574 F.2d at 776; *see Schonewolf*, 972 F. Supp. at 284-85.

Following review of the entire record on appeal from a denial of benefits, the Court can enter "a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). Remand is appropriate if the record is incomplete or if the ALJ's decision lacks adequate reasoning or contains illogical or contradictory findings. *See Burnett*, 220 F.3d at 119-20; *Podedworny v. Harris*, 745 F.2d 210, 221-22 (3d Cir. 1984). Remand is also appropriate if the ALJ's findings are not the product of a complete review which "explicitly weigh[s] all relevant, probative and available evidence" in the record. *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994) (internal quotation marks omitted); *see A.B. on Behalf of Y.F. v. Colvin*, 166 F. Supp. 3d 512, 518 (D.N.J. 2016). A decision to "award

benefits should be made only when the administrative record of the case has been fully developed and when substantial evidence on the record as a whole indicates that the claimant is disabled and entitled to benefits." *Podedworny*, 745 F.2d at 221-22 (citation and quotation omitted); *see A.B.*, 166 F. Supp. 3d at 518. In assessing whether the record is fully developed to support an award of benefits, courts take a more liberal approach when the claimant has already faced long processing delays. *See*, *e.g.*, *Morales v. Apfel*, 225 F.3d 310, 320 (3d Cir. 2000). An award is "especially appropriate when "further administrative proceedings would simply prolong [Plaintiff's] waiting and delay his ultimate receipt of benefits." *Podedworny*, 745 F.2d at 223; *see Schonewolf*, 972 F. Supp. at 290.

**B. Sequential Evaluation Process**

The Social Security Act establishes a five-step sequential evaluation for determining whether a plaintiff is disabled within the meaning of the statute. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). "The claimant bears the burden of proof at steps one through four, and the Commissioner bears the burden of proof at step five." *Smith v. Comm'r of Soc. Sec.*, 631 F.3d 632, 634 (3d Cir. 2010) (citing *Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 92 (3d Cir. 2007)).

At step one, the ALJ determines whether the plaintiff is currently engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520(b), 416.920(b). If so, then the inquiry ends because the plaintiff is not disabled.

At step two, the ALJ decides whether the plaintiff has a "severe impairment" or combination of impairments that "significantly limits [the plaintiff's] physical or mental ability to do basic work activities[.]" 20 C.F.R. §§ 404.1520(c), 416.920(c). If the plaintiff does not have a severe impairment or combination of impairments, then the inquiry ends because the plaintiff is not disabled. Otherwise, the ALJ proceeds to step three.

At step three, the ALJ decides whether the plaintiff's impairment or combination of impairments "meets" or "medically equals" the severity of an impairment in the Listing of Impairments ("Listing") found at 20 C.F.R. § 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, then the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least 12 months. *Id*. at §§ 404.1509, 416.909. Otherwise, the ALJ proceeds to step four.

At step four, the ALJ must determine the plaintiff's residual functional capacity ("RFC") and determine whether the plaintiff can perform past relevant work. 20 C.F.R. §§ 404.1520(e), (f), 416.920(e), (f). If the plaintiff can perform past relevant work, then the inquiry ends because the plaintiff is not disabled. Otherwise, the ALJ proceeds to the final step.

At step five, the ALJ must decide whether the plaintiff, considering the plaintiff's RFC, age, education, and work experience, can perform other jobs that exist in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(g), 416.920(g). If the ALJ determines that the plaintiff can do so, then the plaintiff is not disabled. Otherwise, the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least twelve months.

## III. ALJ DECISION AND APPELLATE ISSUES

Plaintiff was 63 years old on the alleged disability onset date. R. 26. The ALJ found that Plaintiff met the insured status requirements of the Social Security Act through September 30, 2024. R. 17. At step one, the ALJ found that the Plaintiff had not engaged in substantial gainful activity since September 8, 2021, her alleged onset date. *Id.*

At step two, the ALJ found that Plaintiff suffered from the following severe impairments: major depressive disorder, generalized anxiety disorder, and post-traumatic stress disorder

(PTSD). *Id*. The ALJ also found that the Plaintiff's "hyperlipidemia and migraines are non-severe, as they do not cause significant work-related limitations of function but only a slight abnormality or a combination of abnormalities that have no more than a minimal effect on her ability to work." *Id.* The ALJ further found that Plaintiff "does not have medically determinable impairments of IBS or neck/back disorder during the relevant period." R. 18.

At step three, the ALJ found that Plaintiff did not suffer an impairment or combination of impairments that met or medically equaled the severity of any Listing. R. 19–20.

At step four, the ALJ found that Plaintiff had the RFC to perform "a full range of work at all exertional levels," subject to various non-exertional limitations. R. 20–26. The ALJ also found that this RFC did not permit the performance of Plaintiff's past relevant work as a teacher, secondary school. R. 26.

At step five, the ALJ found that Plaintiff had the RFC to perform a significant number of other jobs in the national economy—*i.e.*, floor waxer, approximately 117,533; hand packager, approximately 70,335; and kitchen helper, approximately 102,079. R. 26–27. The ALJ therefore concluded that Plaintiff was not disabled within the meaning of the Social Security Act from September 8, 2021, her alleged onset date, through the date of the decision. R. 28.

Plaintiff disagrees with the ALJ's findings at step four and asks that the decision of the Commissioner be reversed and remanded for further proceedings. *Plaintiff's Brief*, ECF No. 14 ("*Pl. Br.*"); *Plaintiff's Reply Brief*, ECF No. 21 ("*Pl. Reply*"). Specifically, Plaintiff contends that the ALJ erred by: 1) failing to follow the regulations when evaluating the medical opinions relating to mental functioning, and 2) failing to identify substantial evidence supporting the RFC finding. *Pl. Br.* at 17.

The Commissioner takes the position that his decision should be affirmed in its entirety

because the ALJ's decision correctly applied the governing legal standards, reflected consideration of the entire record, and was supported by sufficient explanation and substantial evidence. *Defendant's Brief*, ECF No. 20 ("*D. Br.*").

## IV. SUMMARY OF RELEVANT MEDICAL EVIDENCE[3]

The ALJ noted that at the hearing, Plaintiff, a high school teacher, had testified that her students "fought constantly," "she feared for her safety," and that there were "several traumatic events at school that resulted in her stopping work." R. 21. She further testified that although she "tried not to let panic attacks affect her work," she had "crying episodes, was paranoid, and had poor organization." *Id.* She testified that she had used all of her sick days and that she had been receiving treatment through Workers' Compensation, but they had terminated her treatment. *Id.*

With respect to the objective medical evidence, the ALJ reviewed the extensive treatment records of Plaintiff's treating psychiatrist, Dr. Alexander Iofin, M.D., who had been treating Plaintiff since before the alleged onset date. *Id.* The ALJ cited the earliest treatment record, May 15, 2019, where Plaintiff complained she was upset about low scores from her employer, increased stress, anxiety and frustration, and was diagnosed with PTSD. *Id.* (citing Ex. 8F at 3). The ALJ also reviewed Dr. Iofin's March 4, 2021, case review, completed over six months prior to the alleged onset date, in which he described the school fight in 2013 that was the "ostensible genesis" of Plaintiff's PTSD, and he reviewed her follow-up treatment, noting that in 2020, Workers' Compensation assessed Plaintiff as being at "maximum medical improvement," terminating her coverage for psychiatric treatment. *Id.* (citing Ex. 8F at 79–101, R. 900–21 ("March 2021 report")). Dr. Iofin further reviewed background medical literature and research.

---

[3] This discussion is limited to Plaintiff's mental impairments, which is the focus of Plaintiff's challenge.

*Id*. Although Dr. Iofin disputed the decision to terminate Workers' Compensation coverage and disagreed with the prior periodic psychiatric evaluations, the ALJ noted that Dr. Iofin "believed that [Plaintiff] would be able [to] continue her employment as a full-time teacher," "with appropriate outpatient treatment[.]" *Id.*

The ALJ also noted that at a July 7, 2021 primary care visit – "[c]loser to the time of the alleged onset date" – Plaintiff reported that "her anxiety had improved[.]" *Id.* (citing Ex. 1F at 226). On August 23, 2021, Dr. Iofin reevaluated Plaintiff, noting that she "had increased anxiety over the impending beginning of the academic year," but that her conditions were "only moderate in severity," and she had had interim treatment with another provider. R. 21–22 (citing Ex. 8F at 27). Although her mental status examination showed "irritability, short attention span, moderate depression, and tense affect," she had "normal, coherent, and spontaneous speech, normal thought content, intact associations, logical thought process, full orientation, normal cognitive functioning, cooperative behavior, and fair insight and judgment." R. 22.

The ALJ pointed to the September 30, 2021, visit with Dr. Iofin, where Plaintiff was noted to have increased "anxiety to the point that she became confused," but that she had similar mental status examinations findings and she was continued on the same medication regimen, with no recommendation for more restrictive treatment. *Id.* At a subsequent visit on October 11, 2021, her anxiety had improved, and at a later visit on October 14, 2021, she was noted to have a "better ability to think logically," but was prescribed an additional antidepressant. *Id.*

The ALJ cited an October 19, 2021, visit, where Dr. Iofin noted that Plaintiff's daughter had told him that family members had noted deficits in Plaintiff's short-term memory, but his examination showed "normal cognitive functioning." R. 22. Citing a visit on November 4, 2021, the ALJ noted that Plaintiff's mental status examination findings were "similar," and she was

assessed as "low risk," even though her dosage of antidepressant was increased. *Id.* At the December 13, 2021, visit, Dr. Iofin found "gradual but constant improvement in [Plaintiff's] anxiety and PTSD," but felt she was unable to return to work. *Id.* The ALJ noted that, although her anxiety medication was halved at that December visit, at the subsequent January 24, 2022 visit, she was prescribed an insomnia medication. *Id.* At the March 25, 2022 visit, Plaintiff expressed anxiety about her financial situation and Workers' Compensation case, but her risk was assessed as "low" and her Adderall was discontinued. *Id.* The ALJ noted that at an April 21, 2022, visit, Dr. Iofin diagnosed Plaintiff with "recurrent, moderate major depressive disorder, generalized anxiety disorder, and insomnia," adjusting her anxiety medication. *Id.*

The ALJ also described a May 20, 2022, psychiatric independent medical examination conducted by Matthew Pitera, M.D. *Id.* The exam showed Plaintiff to be "tense, sad, listless, anergic, and downcast demeanor," but also noted that she was "friendly and cooperative," with "good grooming, intact language skills, intact and logical associations, normal thought content, intact cognitive functioning and fund of knowledge, full orientation, normal vocabulary and insight, intact judgment, and intact short and long-term memory and ability to abstract and do calculations." *Id.* (citing Ex. 3F). Her diagnosis was "recurrent, severe major depressive disorder without psychotic features and chronic PTSD." *Id.* Dr. Pitera found Plaintiff was "not at maximum medical improvement" and "not ready to return to work" and recommended continued medication treatment with Dr. Iofin, with augmentation by an agent such as Abilify, and a return to cognitive behavioral therapy. R. 22-23.

The ALJ further described a visit with Dr. Iofin on June 8, 2022, during which Plaintiff reported "ongoing significant anxiety, and her anxiety medication was adjusted, but she was not recommended to receive more restrictive treatment[.]" R. 23. The ALJ noted that during a visit

on July 14, 2022, Plaintiff reported to Dr. Iofin that her "main problem was financial difficulty" and reported no medication side effects. *Id*. On that visit and in visits through November 29, 2022, the ALJ noted that Plaintiff "continued to have similar mental status examinations findings, and she was assessed as low risk and continued on the same medication regimen[.]" *Id*.

Based on the record from a December 12, 2022, visit, the ALJ observed that Plaintiff had reported to Dr. Iofin that she was experiencing persistent sleep issues, including nightmares, so he increased her insomnia medication. *Id.* (citing Ex. 6F at 14-15). The ALJ described visits between December 29, 2022, and September 12, 2023, during which Plaintiff expressed increased symptoms and stressors, but continued to have "similar mental status examination findings, and she was assessed as low risk with largely stable chronic conditions, and continued on the same medication regimen[.]" *Id*.[4]

The ALJ commented that on June 30, 2023, Dr. Iofin updated his earlier March 2021 report and concluded that Plaintiff would require lifelong psychiatric treatment and at that time was not able to return to her employment as a teacher. *Id*. (citing Ex. 8F at 72-78, R. 893–99 ("June 2023 report")).

The ALJ further noted that while Plaintiff expressed increased symptoms and stressors at subsequent visits to Dr. Iofin between October 4, 2023, and January 11, 2024, she continued to have "similar mental status examinations," was assessed as "low risk with largely stable chronic conditions," and there was no change in her medication regimen. *Id.* The ALJ cited Plaintiff's

---

[4] In what appears to be a typographical error, the Court notes that in describing a visit on March 23, 2023, the ALJ stated that Plaintiff "was assessed with an overall significant *improvement* in functioning[,]" *id*. (citing Ex. 6F at 2 (R. 721)), while the record reflects that Plaintiff was assessed with "with an overall significant *impairment* in functioning[.]" R. 721 (emphasis added). Notably, as described above, subsequent visits between October 2023 and January 2024 reflected, *inter alia*, "low risk with largely stable chronic conditions[.]" R. 23.

own statements during visits on October 11, 2023, November 30, 2023, and December 15, 2023, in which she acknowledged that "treatment had been effective in mitigating her symptoms." *Id.*

The ALJ discounted opinions from psychological consultants, including Dr. William Coffey, Psy.D on January 31, 2023, finding them only partially persuasive. R. 24-25 (finding Dr. Coffey's opinion "only partially persuasive, as he did not provide a function-by-function assessment of the claimant's ability to perform mental work-related activities"); (finding the opinions of psychological consultants at the initial and reconsideration levels to be "only partially persuasive, as they reviewed an incomplete record, and their opinions are not supported by nor consistent with the totality of the record which reflects that the claimant has moderate limitations in all of the B criteria").

The ALJ further rejected the opinion of Dr. Nick Tolchin, Ph.D, who conducted a psychological IME on August 31, 2022. R. 25. In his report, Dr. Tolchin observed that Plaintiff had "moderate depression and anxiety and mild impairment in persistence, but no limitation in memory, attention, and concentration." *Id.* Dr. Tolchin further noted that although Plaintiff's PTSD stemmed from the 2013 work incident, she was "subsequently able to continue working at full duty for over six years," and he "felt that her ongoing emotional distress was not directly related to that incident, but rather over [Plaintiff's] reports of being upset that her employer did not grant her request to teach higher level courses, as well as the ongoing unemployment and financial hardship." The ALJ rejected Dr. Tolchin's assessment that Plaintiff's "PTSD was chronic and her depression was moderate," finding his opinion "generally unpersuasive," noting that although Dr. Tolchin attempted to "quantify limitations related to certain mental impairments . . . his ratings of moderate to chronic are not policy compliant according to the rules of the Agency, and without more specificity, are not persuasive." R. 25.

Finally, the ALJ reviewed the February 1, 2024, Mental Medical Source Statement prepared by Dr. Iofin, R. 1503–07 ("February 2024 opinion"), noting that Dr. Iofin had opined that the Plaintiff was "overall precluded from all performance in a regular work setting particularly with respect to sustained concentration and memory, and was only somewhat less limited adaptation, but was not limited with respect to simple instructions." R. 25. The ALJ found the February 2024 opinion to be "partially persuasive," and set forth several reasons for this conclusion. R. 25. (*See* discussion *infra.*).

The February 2024 opinion was prepared by Dr. Iofin in response to a form entitled Mental Medical Source Statement, which contained a series of questions to be answered by the doctor. In response to the first question, Dr. Iofin indicated that he had treated Plaintiff for "many years every few weeks[.]" R. 1503. Dr. Iofin diagnosed Plaintiff with PTSD (PTSD F43.10), generalized anxiety disorder (GAD F41.1), and major depressive disorder (MDD F33.1). *Id*. When asked to describe the treatment and Plaintiff's response, as well as the clinical findings that demonstrate the severity of Plaintiff's mental impairments and symptoms, Dr. Iofin referred to reports enclosed with the statement. *Id*. (responding "enclosed [are] 2 [of] my reports that [are] self-explanatory" and "see my reports"). He opined that Plaintiff's prognosis was "poor[.]" *Id*.

When asked to identify Plaintiff's signs and symptoms from a list, Dr. Iofin checked the boxes next to the following: decreased energy; blunt, flat or inappropriate affect (with "flat" circled); generalized persistent anxiety; pathological dependence, passivity or aggressivity (with "passivity" circled); persistent disturbances of mood or affect (with "mood" circled); emotional withdrawal or isolation (with "emotional withdrawal" circled); psychological or behavioral abnormalities associated with a dysfunction of the brain with a specific organic factor judged to

be etiologically related to the abnormal mental state and loss of previously acquired functional abilities (with "TBI"—traumatic brain injury—handwritten in the box); emotional lability; easy distractibility; memory impairment–short, intermediate, or long-term; and sleep disturbance. R. 1504.

Dr. Iofin also rated Plaintiff's mental abilities to function in a full-time, regular, competitive work setting (unskilled work) for more than six consecutive months using the following scale: Category I, which does not preclude performance of any aspect of a job; Category II, which precludes performance for less than 10% of an 8-hour workday; Category III, which precludes performance from 11% to 20% of an 8-hour workday; Category IV, which precludes performance for more than 20% of an 8-hour workday; and Category V, which precludes all performance in a regular work setting. R. 1505.

Dr. Iofin found that the following abilities fell into Category I: Plaintiff's abilities to remember work-like procedures; understand, remember, and carry out very short and simple instructions; and ask simple questions or request assistance. R. 1505–06.

Dr. Iofin opined that the following abilities fell into Category II: Plaintiff's abilities to make simple work-related decisions; interact appropriately with the general public; and accept instructions and respond appropriately to criticism from supervisors. *Id*. He further opined that Plaintiff's ability to set realistic goals or make plans independently of each other fell within Category III. R. 1506.

According to Dr. Iofin, the following abilities fell into Category IV: Plaintiff's abilities to carry out detailed instructions; maintain attention for two-hour segments; get along with co-workers or peers without unduly distracting them or exhibiting behavioral extremes; respond appropriately to changes in a routine work setting; travel to unfamiliar places or use public

transportation; and be aware of normal hazards and take appropriate precautions. R. 1505–06.

He also opined that Plaintiff's abilities to understand and remember detailed instructions; maintain regular attendance and be punctual within customary, usually strict tolerances; sustain an ordinary routine without special supervision; work in coordination with or proximity to others without being unduly distracted; complete a normal workday and workweek without interruptions from psychologically based symptoms; perform at a consistent pace without an unreasonable number and length of rest periods; and be aware of normal hazards and take appropriate precautions precluded Plaintiff from all performance in a regular work setting (Category V). *Id*.

Dr. Iofin did not respond and left the answer space blank when asked to explain the limitations in Categories III, IV, and V. R. 1506.

According to Dr. Iofin, Plaintiff would, on average, be absent from work more than four days per month due to her impairments or treatment. R. 1507. Dr. Iofin affirmed that Plaintiff's impairments lasted or could be expected to last at least twelve months and that her impairments were reasonably consistent with the symptoms and functional limitations in the evaluation. *Id*. He denied that she was a malingerer. *Id*.

When asked to describe any additional reasons not covered above why Plaintiff would have difficulty working at a regular job on a sustained basis, Dr. Iofin responded, "see my reports[.]" *Id*. He denied that Plaintiff was currently working full-time and affirmed that Plaintiff's symptoms and resulting functional limitations would increase if she was working full-time. *Id*. When asked if the symptoms, clinical findings, and limitations would be increased compared to the reported symptoms and findings in his recent treatment notes if she was working full-time, Dr. Iofin responded, "possibly[.]" *Id*.

In response to the question whether it was likely that the functional limitations described above have existed to the same degree since at least September 8, 2021, Dr. Iofin responded, "see my reports[.]" *Id*. When asked if the functional limitations were not the same, what was the earliest date of the existence of such limitations, Dr. Iofin responded, "when pt lost her full time job." *Id*.

## V. PARAGRAPH B FINDINGS

At step three, the ALJ analyzed the Paragraph B criteria. R. 19–20. In reviewing the four broad functional areas—Paragraph B criteria—the ALJ found that "[t]he severity of the claimant's mental impairments, considered singly and in combination, do not meet or medically equal the criteria of listings 12.04, 12.06, and 12.15." R. 19.

In reviewing the first functional area – "understanding, remembering, or applying information" – the ALJ found that Plaintiff had a "moderate limitation." *Id.* In reaching this determination, he reviewed various records, including the psychological consultative examination and Dr. Iofin's treatment notes. *Id.* The ALJ noted that Plaintiff alleged deficits in memory and following instructions. *Id*. At the psychological consultative examination, she was able to repeat five digits forward and three backward. *Id.* (citing Ex. 5F at 4). Citing Plaintiff's treating psychiatrist's notes, the ALJ noted that the treating psychiatrist "did not specifically assess [Plaintiff's] memory during treatment;" he "regularly assessed her with normal cognitive functioning, even when the claimant's daughter reported her observations of deficits in [Plaintiff's] short term memory." *Id.* (citing Exs. 2F, 6F, & 8F-9F). The ALJ further noted that the treating psychiatrist opined in the February 2024 opinion that while Plaintiff "did not have significant limitations with respect to simple instructions[,]. . . she had much more significant limitations with respect to detailed instructions[.]" *Id.* (citing Ex. 11F at 6).

In the second functional area of interacting with others, the ALJ found that Plaintiff had a "moderate limitation." R. 19. He cited Plaintiff's claim that "she isolated herself and had difficulty getting along with others." *Id.* (citing Ex. 5E at 5-6). He further noted that at the psychological consultative examination, Plaintiff was observed to be "tense, depressed, anxious, and easily overwhelmed[.]" *Id.* (citing Ex. 5F at 4). However, he found a moderate limitation, noting that at the consultative examination, Plaintiff was "observed to have normal eye contact and was noted to relate adequately to the examiner[.]" *Id.* (citing Ex. 5F at 3-4). He also relied on notes from her treating psychiatrist that observed her to "have variable mood, at times glum, at times tense, and at times irritable," also "regularly observed to have cooperative behavior[.]" *Id.* (citing Exs. 2F, 6F, & 8F-9F).

As to the third functional areas of "concentrating, persisting or maintaining pace," the ALJ found "moderate limitation." *Id.* The ALJ cited Plaintiff's alleged deficits in attention and concentration, *id.* (citing Ex. 5E at 1, 5-6), and her inability at the psychological consultative examination to perform serial 3s or serial 7s, or multiplication and division[.] R. 19–20 (citing Ex. 5F at 4). However, in determining that Plaintiff was only moderately limited in this area, the ALJ also cited the fact that "the claimant did not have any problem following the topic of conversation or participating in the interview and was assessed with overall intact attention[.]" R. 20. The ALJ also cited the fact that although Plaintiff's treating physician observed her to be easily distracted, the physician's notes indicate that she is "attentive and with normal cognitive functioning[.]" *Id.* (citing Ex. 2F, 6F, & 8F-9F).

As for the fourth functional area of adapting and managing oneself, again, the ALJ found Plaintiff to have a "moderate limitation." R. 20. The ALJ cited Plaintiff's alleged difficulty in handling stress and changes in routine, *id.* (citing Ex. 5E at 7), as well as the fact that her treating

psychiatrist adjusted her medications on various occasions. *Id.* (citing Ex. 2F at 2-3, 7-8, 19-20; Ex. 6F at 14-15, 42-43; Ex. 8F at 41-42, 48-50, 59-60; Ex. 9F at 26-27). He found, however, a moderate limitation based upon the fact that she had had "conservative outpatient mental health treatment, was often assessed to be at low risk, and . . .was never recommended for more restrictive treatment, even at visits during which she reported an increase in symptoms or stressors[.]" R. 20 (citing Exs. 2F, 6F, 8F-9F). The ALJ also relied on the treating psychiatrist's assessment that she had "developmentally appropriate insight and judgment," and the examining psychological consultant's assessment of her "as neat, clean, and well groomed, with adequate insight and judgment[.]" R. 20 (citing Ex. 5F at 3-4).

Since the ALJ found only "moderate" limitations in all four areas of functioning, he concluded that the Paragraph B criteria had not been met, because Plaintiff s mental impairments did not cause at least two "marked" limitations or one "extreme" limitation. R. 20. The ALJ then considered whether the Paragraph C criteria were satisfied, finding that there were "no psychiatric emergency department visits, intensive outpatient programs, inpatient hospitalizations, nor any significant mental exacerbations since the alleged onset date." *Id.* Based on the absence in the record of any of these incidents, the ALJ found the Paragraph C criteria had not been met and that Plaintiff "does not have a minimal capacity to adapt to changes in her environment or demands that are not already part of her daily life." *Id.*

The ALJ further explained that paragraph B limitations are not an RFC assessment, and that the mental RFC used at later steps requires a more detailed assessment of the areas of mental functioning. *Id*. (noting that the RFC at step four "reflects the degree of limitation the undersigned has found in the 'paragraph B' mental function analysis." *Id*.

## VI. DISCUSSION

Plaintiff's challenge to the ALJ's decision contends that the ALJ failed to properly evaluate Dr. Iofin's opinions regarding Plaintiff's mental functioning in accordance with the regulations and failed to identify substantial evidence to support the RFC finding. (*Pl. Br.* at 17). For the reasons that follow, the Court rejects Plaintiff's arguments.

"Findings of fact by the [Commissioner] must be accepted as conclusive by a reviewing court if supported by substantial evidence." *Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981). Substantial evidence has been defined as "such relevant evidence as a reasoning mind might accept as adequate to support a conclusion." *Id*. (citing *Lewis v. Califano*, 616 F.2d 73, 76 (3d Cir. 1980); 42 U.S.C. § 405(g)). The ALJ's decision must include "a clear and satisfactory explication of the basis on which it rests," sufficient to enable a reviewing court "to perform its statutory function of judicial review." *Cotter*, 642 F.2d at 704–05. Specifically, the ALJ must discuss the evidence that supports the decision, the evidence that the ALJ rejected, and explain why the ALJ accepted some evidence but rejected other evidence. *Id*. at 705–06; *Diaz v. Comm'r of Soc. Sec*., 577 F.3d 500, 505–06 (3d Cir. 2009); *Fargnoli v. Massanari*, 247 F.3d 34, 42 (3d Cir. 2001) ("Although we do not expect the ALJ to make reference to every relevant treatment note in a case . . . we do expect the ALJ, as the factfinder, to consider and evaluate the medical evidence in the record consistent with his responsibilities under the regulations and case law."). Without this explanation, "the reviewing court cannot tell if significant probative evidence was not credited or simply ignored." *Cotter*, 642 F.2d at 705; *see also Burnett,* 220 F.3d at 121 (citing *Cotter*, 642 F.2d at 705).

For claims filed after March 27, 2017,[5] the regulations eliminated the hierarchy of medical source opinions that gave preference to treating sources. *Compare* 20 C.F.R. §§ 404.1527, 416.927 *with* 20 C.F.R. §§ 404.1520c(a), 416.927c(a) (providing, *inter alia*, that the Commissioner will no longer "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources"). Instead, the Commissioner will consider the following factors when considering all medical opinions: (1) supportability; (2) consistency; (3) relationship with the claimant, including the length of the treating examination, the frequency of examinations, and the purpose of the treatment relationship; (4) the medical source's specialization; and (5) other factors, including, but not limited to, "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements." 20 C.F.R. §§ 404.1520c(c), 416.920c(c).

The regulations emphasize that "the most important factors [that the ALJ and Commissioner] consider when [] evaluat[ing] the persuasiveness of medical opinions and prior administrative medical findings are supportability (paragraph (c)(1) of this section) and consistency (paragraph (c)(2) of this section)." *Id*. at §§ 404.1520c(a), 416.920c(a). As to the supportability factor, the regulations provide that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." *Id*. at §§ 404.1520c(c)(1), 416.920c(c)(1). As to the consistency factor, the regulations provide that "[t]he more consistent a

[5] As previously noted, Plaintiff's claims were filed on June 11, 2022, and September 28, 2022, respectively.

medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." *Id*. at §§ 404.1520c(c)(2), 416.920c(c)(2).

The applicable regulations further require the ALJ to articulate his or her "consideration of medical opinions and prior administrative medical findings" and articulate in the "determination or decision how persuasive [he or she] find[s] all of the medical opinions and all of the prior administrative medical findings in [the claimant's] case record." *Id*. at §§ 404.1520c(b), 416.920c(b). As previously noted, "[s]upportability and consistency are the most important factors. . . . ALJs need not explain their determinations regarding the other factors, but they must discuss supportability and consistency." *Gongon v. Kijakazi*, 676 F. Supp. 3d 383, 394 (E.D. Pa. 2023) (citations omitted); *see also Stamm v. Kijakazi*, 577 F. Supp. 3d 358, 370 (M.D. Pa. 2021) ("Generally, the ALJ may, but is not required to, explain his or her consideration of the other factors, but if there are two equally persuasive medical opinions about the same issue that are not exactly the same, then the ALJ must explain how he or she considered the other factors."). Finally, "a judge need not reiterate the magic words 'support' and 'consistent' for each doctor" in order to satisfy the articulation requirements for the supportability and consistency factors, providing that the judge "weave[s] supportability and consistency throughout her analysis of which doctors were persuasive." *Zaborowski v. Comm'r of Soc. Sec.*, 115 F.4th 637, 639 (3d Cir. 2024).

In the present case, the ALJ not only conducted an extensive review and evaluation of the treatment records in this case, *see Fargnoli*, 247 F.3d at 42, he specifically considered Dr. Iofin's

February 2024 opinion at step four when crafting the RFC determination.[6] R. 25. In finding Dr. Iofin's opinion to be "partially persuasive," the ALJ found the doctor's opinion that Plaintiff was "not limited with respect to simple instructions," to be supported by the examining consultant's observation of a "slight memory deficit, as well as consistent with" the doctor's own records showing "overall normal cognitive functioning[.]" *Id*. (citing Ex. 2F, 5F-6F, 8F-9F). However, he discounted Dr. Iofin's opinion that Plaintiff was "overall precluded from all performance in a regular work setting particularly with respect to sustained concentration and memory, and was only somewhat less limited in adaptation. *Id.* (citing Ex. 11F at 4-8). He explained that he found "the balance" of the doctor's opinion was "overly restrictive when considering his underlying treatment record that showed largely stable mental status examination findings, generally [sic] assessment of low risk, and no recommendation for more restrictive treatment[.]" *Id.* (citing Ex. 2F, 6F, 8F-9F). To the extent that the doctor had also opined that Plaintiff would be absent more than four days per month, the ALJ found this to be "speculative." *Id.*

Plaintiff contends that the ALJ failed to adhere to the regulations when evaluating the opinion of Dr. Iofin. (*Pl. Br.* at 20). Plaintiff first contends that the ALJ failed to address the supportability factor because he did not address the doctor's extensive treatment history and limitations, including the March 2021 and June 2023 reports, in which the doctor not only

---

[6] The ALJ determined that Plaintiff had the RFC to perform a full range of work at all exertional levels but with the following non-exertional limitations:

> the claimant can never climb ladders, ropes, or scaffolds. She can never work at unprotected heights, hazardous, moving mechanical parts, or in vibration. The claimant is able to perform simple routine tasks; make simple work-related decisions; occasionally interact with supervisors and coworkers; never interact with the public; and is able to tolerate no more than occasional changes in the routine work setting.

R. 20.

summarized Plaintiff's psychiatric history, but provided the scientific evidence supporting his diagnoses. (*Id*. at 21 (citing R. 1503, 1514-1536)). Plaintiff complains that the ALJ made a passing reference to these reports, but did not discuss them in the context of analyzing Dr. Iofin's February 2024 opinion. (*Id*. (citing R. 21, 23, 25)). Specifically, Plaintiff notes that in the March 2021 psychiatric case review to Workers' Comp., the doctor detailed Plaintiff's history, including the assault at work and the Plaintiff's development of PTSD, anxiety, and depression, and explained the bases for his diagnoses. *Id.* Plaintiff also refers to the June 30, 2023, report of Dr. Iofin, detailing the genesis of Plaintiff's treatment, and how, despite her improvement and return to work, "tremendous pressure" from Workers' Comp. to discontinue her treatment and decrease some of her medications resulted in "a deterioration in Plaintiff's functioning" and an exacerbation of her symptoms. *Id.* at 21-22. Plaintiff further notes that in this June 2023 report, the doctor opined noted that Plaintiff could not return to work as a teacher and that the absence of psychiatric treatment "would lead to further deterioration of her psychiatric symptoms." *Id.* at 22 (citing R. 893-95).

To the extent that Plaintiff argues error on the part of the ALJ for his alleged failure to properly evaluate Dr. Iofin's two case reviews, the Court finds Plaintiff's arguments unavailing. Contrary to Plaintiff's argument, the ALJ made more than a "passing reference" to Dr. Iofin's March 2021 case review, specifically mentioning the "ostensible genesis" of the trauma, the 2020 termination of Workers' Comp. coverage for psychiatric treatment, as well as the doctor's review of medical literature and research, and his disagreement with the periodic psychiatric evaluation of Workers' Comp. R. 21. Moreover, in addressing the June 30, 2023 report of Dr. Iofin, the ALJ stated: "Dr. Iofin produced an update to his earlier March 2021 psychiatric report and concluded that the claimant would require lifelong psychiatric treatment and at the present

time was not able to return to her employment as a teacher." *Id.* (citing Ex. 8F at 72-78). While Plaintiff criticizes the extent to which the ALJ discussed these two case reviews and complains that the doctor did not address them in the context of the February 2024 opinion, Plaintiff does not explain what more the ALJ should have discussed or how such a discussion would have impacted his analysis of the February 2024 opinion.

As detailed above, the ALJ found that Dr. Iofin's February 2024 opinion was persuasive to the extent that Dr. Iofin opined that Plaintiff was limited to simple instructions. R. 25. The ALJ specifically explained that such limitation was supported by and consistent with Dr. Iofin's own underlying treatment record that showed "overall normal cognitive functioning" and with the consultative examiner's "observation of a slight memory deficit[.]" *Id*. Based on this record, substantial evidence supports the ALJ's finding that Dr. Iofin's opined limitation to simple instructions was persuasive. *See Cortese v. Bisignano*, No. 4:24-CV-1830, 2026 WL 1123499, at *14 (M.D. Pa. Jan. 27, 2026), *report and recommendation adopted*, No. 4:24-CV-01830, 2026 WL 580170 (M.D. Pa. Mar. 2, 2026) (finding the ALJ "adequately articulated" his evaluation of a treating opinion as "partially persuasive" to the extent that opinion found the claimant was capable of "simple work" and where the ALJ explained that "the marked and extreme limitations or degree of disruption of absenteeism were not supported by objective findings" and inconsistent with "normal mental status examinations").

Next, in finding the balance of Dr. Iofin's February 2024 opinion unpersuasive, the ALJ found it was "overly restrictive" in light of his underlying treatment record. R. 25. In support of this finding, the ALJ pointed out that Dr. Iofin's treatment record revealed "largely stable mental status examination findings, generally assessment of low risk, and no recommendation for more restrictive treatment[.]" *Id*. (finding further that an opinion as to Plaintiff's future absences from

work was "speculative"). This record evidence of generally conservative treatment and largely stable examinations over time substantially supports the ALJ's finding that the balance of Dr. Iofin's February 2024 opinion was not persuasive. *See id.*; *see also* 20 C.F.R. §§ 404.1520c(a)(1)–(2), 416.920c(1)–(2); *cf. Brown v. Comm'r of Soc. Sec.*, No. 4:20-CV-2300, 2022 WL 4080773, at *7 (M.D. Pa. Sept. 6, 2022) ("Conservative treatment can be used as a factor in evaluating medical opinion evidence.") (citing 20 C.F.R. § 416.920c(c)(3)(iv)); *Koletar v. Kijakazi*, No. 1:21-CV-994, 2022 WL 3598090, at *13 (M.D. Pa. Aug. 23, 2022) (concluding that substantial evidence supported the ALJ's finding that a medical opinion was not persuasive because "the examination findings of the longitudinal record are not consistent with these rather extreme limitations").

While Plaintiff complains that the ALJ's analysis in this regard did not discuss Dr. Iofin's March 2021 and June 2023 reports "within the context of Dr. Iofin's February 2024 opinion[,]" (*Pl. Br.* at 21–22), this argument does not provide a basis for remand. As detailed above, the ALJ expressly relied on Dr. Iofin's treatment record when explaining why he found persuasive the doctor's suggested limitation to simple instructions and why the balance of Dr. Iofin's February 2024 opinion was not persuasive. R. 25. Moreover, as Plaintiff acknowledges, the ALJ discussed Dr. Iofin's March 2021 and June 2023 reports when recounting Plaintiff's treatment history with the doctor. R. 21, 23; *Pl. Br.* at 21. Notably, where "the ALJ discussed and analyzed the evidence extensively before determining the persuasiveness of the medical opinions[,] [t]he ALJ was not required to repeat this information for the sake of elaborating on her findings of persuasiveness." *Serrano v. Kijakazi*, No. CV 20-3985, 2021 WL 4477137, at *3–4 (E.D. Pa. Sept. 30, 2021). Accordingly, the Court finds that the ALJ properly considered Dr. Iofin's treatment record—including the March 2021 and June 2023 reports—when considering the persuasiveness of Dr.

Iofin's February 2024 opinion.

Plaintiff further argues that the ALJ made "broad assertions" about Plaintiff's impairments and stable mental examination findings and being "low risk," with only "general citations to full exhibits with no specific page citations." (*Pl. Br.* at 22). Plaintiff argues, however, that by contrast, the record supports Dr. Iofin's February 2024 opinion, and by simply referring to "similar mental status examinations" at visits, the ALJ "clearly downplayed the nature of these findings, which were consistently abnormal." (*Id.* (citing R. 22, 23)). Plaintiff cites to numerous pages of the doctor's records showing Plaintiff to be consistently presented as "irritable, inattentive, tense, unhappy, anxious, glum, sad, and/or downcast," and to be "easily distracted or have a short attention span." (*Id.* at 22–23 (citing R. 638, 643, 648, 657, 661, 663, 664, 668, 671, 673, 675, 677, 682, 685, 687, 689, 691, 693, 69, 721, 723, 729, 731, 739, 741, 743, 747, 749, 753, 755, 926, 930, 934, 940, 953, 957, 959, 961, 969)). Plaintiff therefore takes the position that the ALJ improperly selectively cited to the treatment record. (*Id*. at 23–24 (citations omitted)).

The Court disagrees. As a preliminary matter, the Court has already detailed the ALJ's thorough recitation of the record evidence, including Plaintiff's treatment history, which was supported by record citations. R. 21–26. Accordingly, while the ALJ did not include a detailed recitation of the treatment notes with supporting citations when discussing the persuasiveness of Dr. Iofin's February 2024 opinion, he was not required to do so. *See Serrano*, 2021 WL 4477137 at *3–4. Importantly, the ALJ's citations to the record throughout his recitation of the treatment history permit this Court to find and verify specific treatment evidence. R. 21–26.

Moreover, in the ALJ's recitation of the treatment history, he specifically acknowledged that Plaintiff at times displayed negative or abnormal symptoms, noting, *inter alia*, references to

Plaintiff's "irritability, short attention span, moderate depression, and tense affect[,]" R. 22; "anxiety to the point that she was confused[,]" *id*.; reports of "a great deal of anxiety[,]" *id*.; "tense, sad, listless, anergic, and downcast demeanor[,]" *id*.; reports of "ongoing anxiety[,]" "persistent sleep problems[,]" and "[increased symptoms and stressors[.]" R. 23. Contrary to Plaintiff's characterization, the ALJ did not ignore these findings or otherwise selectively cite to the treatment record. He considered that record as a whole, including evidence of negative or abnormal findings or self-reports. *Id*. The ALJ appropriately found that the treatment record also showed largely stable mental status examination findings. R. 21–26.

Notably, the existence of evidence supportive of Plaintiff's argument in this regard does not require remand. The Third Circuit has made it clear that a reviewing court "will uphold the ALJ's decision even if there is contrary evidence that would justify the opposite conclusion, as long as the 'substantial evidence' standard is satisfied." *Johnson v. Comm'r of Soc. Sec*., 497 F. App'x 199, 201 (3d Cir. 2012) (citing *Simmonds v. Heckler*, 807 F.2d 54, 58 (3d Cir. 1986)); *see also Chandler v. Comm'r of Soc. Sec*., 667 F.3d 356, 359 (3d Cir. 2011) ("Courts are not permitted to reweigh the evidence or impose their own factual determinations [under the substantial evidence standard]."); *Hatton v. Comm'r of Soc. Sec. Admin*., 131 F. App'x 877, 880 (3d Cir. 2005) ("When 'presented with the not uncommon situation of conflicting medical evidence . . . [t]he trier of fact has the duty to resolve that conflict.'") (quoting *Richardson v. Perales*, 402 U.S. 389, 399 (1971)).

Finally, Plaintiff notes that the ALJ relied on Dr. Iofin's treatment records to conclude that Plaintiff was "generally low risk[,]" but complains that this term "is not clearly defined" in the doctor's records. (*Pl. Br.* at 22–23). Plaintiff has not persuaded the Court that this issue requires remand. It is true that Dr. Iofin does not expressly explain what he means by Plaintiff

having a "low" risk level. *See*, *e.g.*, R. 22 (citing, *inter alia*, Ex. 8F at 38, 48, R. 859, 869), 23 (citing, *inter alia*, Ex. 6F at 2–13, 16–36, R. 721–32, 735–55; Ex. 9F at 2–25, 29–48, R. 924–47, 951–70). However, Dr. Iofin's treatment records reflect that, on a number of occasions, he assessed Plaintiff at a "moderate" risk level, indicating a comparative analysis of the difference in levels depending on the assessment of Plaintiff's symptoms on any particular visit. *See*, *e.g.*, R. 638, 652, 655, 657, 685, 733, 766, 857, 886. Given the relatively few number of times Dr. Iofin found Plaintiff to be at something other than a "low" risk, the ALJ's reliance on a term that was not explicitly defined, does not require remand because the ALJ's determination implicitly understood the comparative difference in assessment of low versus moderate risk. More importantly, as set forth *supra*, Dr. Iofin's assessment of Plaintiff as "low risk" was only one factor considered by the ALJ when assessing the persuasiveness of the doctor's February 2024 opinion. R. 25. The Court therefore finds that the ALJ did not commit reversible error in relying on that "low risk" evidence.

In short, for all these reasons, the Court concludes that the ALJ's consideration of Dr. Iofin's February 2024 opinion enjoys substantial support in the record.

## VII. CONCLUSION

For these reasons, the Court **AFFIRMS** the Commissioner's decision.

The Court will issue a separate Order issuing final judgment pursuant to Sentence 4 of 42 U.S.C. § 405(g).

**IT IS SO ORDERED.**

Date: August 17, 2026

*s/Cheryl L. Pollak*
CHERYL L. POLLAK
UNITED STATES MAGISTRATE JUDGE